641 S.E.2d 465

Stella Sue ROLAND, Steven Roland, Charles Wright, Patricia Wright, Sea Turtles, LLC, Woods Brown, Jeanne Brown, Lois Glander, Jean King, Michael King, Joseph Lucas, Diane Lucas, Robert Boineau and Avian Golf Investments, LLC, and Lawrence Ridgeway, Respondents,

v.

HERITAGE LITCHFIELD, INC., Heritage Communities, Inc., and Build Star Corporation, Appellants,

and

Build Star Corporation, Third Party Plaintiff,

v.

Right Way Construction, Inc., Donovan Brothers Roofing and Restoration, Inc., and Sam's Drywall, Third Party Defendants.

No. 4204.

Court of Appeals of South Carolina.

Heard Dec. 7, 2006.

Decided Feb. 5, 2007.

Eric G. Fosmire and Andrew N. Cole, both of Columbia, for Appellants.

John W. Davidson and William D. Britt, both of Columbia and Saul Gliserman, of Charleston, for Respondents.

HEARN, C.J.:

Respondents, the owners of eleven condominiums in the Avian Forest development, sued Heritage Litchfield, Inc., Heritage Communities, Inc., and Build Star Corporation (collectively Appellants)[1] for numerous causes of action after discovering mold in the firewall area of the condominiums. The trial court granted Respondents' motion for partial summary judgment as to liability. Appellants appeal, arguing (1) issues of material fact exist with regard to both the extent of the mold problem and its causation, and (2) Respondents do not own the common areas where the mold was found. We affirm.

---

1. Heritage Litchfield, Inc. was the main developer of Avian Forest, and Build Star Corporation was the general contractor for the buildings. Both Heritage Litchfield and Build Star are wholly owned by Heritage Communities, Inc.

## FACTS

Avian Forest is a condominium development in the Litchfield Beach area. The development has numerous buildings, each of which are two stories tall and contain four condominiums. The buildings are divided such that two condominiums are on the ground floor, and two are on the second floor. A firewall separates each individual condominium.

The first buildings erected in the development were buildings 19, 20, and 21, all of which were built during roughly the same time period, beginning in the Spring of 1999. Eleven of the twelve units in these buildings were sold to the Respondents in late 1999. The twelfth unit never sold.

During the construction of these first three buildings, it is undisputed that the firewalls were erected prior to the roofs. Gwyn Hardister, the president of Heritage Litchfield, testified the firewalls were rained on while they were unprotected by a roof. Tommy Hooks, the assistant project manager, also testified that before the roof was built, "moisture had accumulated in those walls and sometime thereafter we saw the signs of mold. . . . Mold was evident in those firewalls."

In March of 2000, a plumbing leak in building 19 led to the discovery of mold on the common firewall between the units. Appellants hired a mold remediation and investigation company, whose investigator determined that the mold had toxic characteristics and was present in the firewalls of all three buildings. The investigator informed Hardister about the mold problem, who in turn advised Respondents not to live in their condominiums.

Respondents filed causes of action against Appellants, alleging breach of the implied warranty of habitability, breach of the implied warranty of workmanlike service, breach of express warranty, and negligence. Appellants answered, and both sides filed motions for partial summary judgment. Respondents sought summary judgment as to liability, and Appellants sought summary judgment as to Respondents' standing to allege any injury to the common elements of the buildings. The trial court granted Respondents' motion and denied Appellants' motion. This appeal followed.

## STANDARD OF REVIEW

"In reviewing the grant of summary judgment, [the appellate court] applies the same standard that governs the trial court under Rule 56, SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pittman v. Grand Strand Entm't, Inc.,* 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005). The appellate court therefore reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party. Id. Once the moving party meets the initial burden of showing an absence of evidentiary support for the opponent's case, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial and cannot simply rest on mere allegations or denials contained in the pleadings. *Miller v. Blumenthal Mills, Inc.,* 365 S.C. 204, 220, 616 S.E.2d 722, 730 (Ct.App.2005).

## LAW/ANALYSIS

Appellants argue summary judgment should have been denied because there are material facts in dispute with regard to causation and the nature and extent of the mold problem. We disagree.

During the summary judgment hearing, Respondents presented numerous depositions wherein agents of the Appellants admitted the mold was caused by the firewalls' exposure during rainy weather. Appellants argue there is a question of fact regarding how much mold was caused by the firewalls exposure during construction and how much mold was caused by other factors, such as the Respondents' failure to properly maintain their air conditioning systems. However, no evidence was presented to the trial court suggesting Respondents contributed to their mold problem, nor was there any evidence suggesting that anything other than the saturation of the firewalls during construction caused the mold in all three buildings. Because mere allegations of comparative negligence are not sufficient to raise an issue of material fact, we find summary judgment was proper with regard to causation. *See Miller,* 365 S.C. at 220, 616 S.E.2d at 730 (explaining that once the moving party meets its initial burden, the nonmoving

party must come forward with specific facts showing there is a genuine issue for trial and cannot simply rest on mere allegations or denials contained in the pleadings).

In addition to their argument regarding causation, Appellants also contend the extent of the mold problem is in dispute. Specifically, they argue there is a question of fact regarding the habitability of the condominiums because two of the unit owners rented their units and there was no evidence in the record that the renters complained of the units' conditions. Additionally, Appellants point out there was testimony that the mold was not dangerous "as long as you don't disturb it, meaning open walls so that the mold is airborne." After a careful review of the record, we find no issue of material fact with regard to the habitability of the units.

While two of the Respondents did indeed rent their units, they ceased renting them once they learned of the mold problem. Furthermore, the "habitability" of a dwelling does not turn on whether a person actually lives there; rather habitability is defined as the "[t]he condition of a building in which inhabitants can live free of serious defects that might harm health and safety...." *Black's Law Dictionary* (8th ed.2004). Here, the only evidence in the record showed Respondents' units were unsafe due to the toxic mold found between the walls. Gwyn Hardister, the president of Heritage Communities, testified that he contacted Phoenix Enviro-Corp to identify whether a mold problem existed in the units. From that investigation, Hardister learned there were high levels of toxic mold in the air samples tested. Hardister told the owners about the mold and advised them not to live in their units. Although Appellants attempt to isolate one line of Hardister's testimony in which he said "as long as you don't disturb [the mold], meaning open walls so that the mold is airborne, it's not dangerous" to support their contention there is an issue of material fact, we find this statement, when read in context, does not preclude summary judgment. Later in Hardister's testimony, he explained the mold could be "disturbed" simply by occupying the units because fluctuations in the humidity, temperature, and air pressure of the units could produce higher levels of the mold. Because neither Hardister's testimony nor the rental of the units raise an issue of

material fact regarding the units' habitability, summary judgment was appropriate.

Next, Appellants argue the trial court erred in granting summary judgment as to liability because the area impacted by mold is a common area belonging to the homeowners' association, not Respondents. We disagree.

The Master Deed of the Avian Forest Development specifically states:

[E]ach UNIT shall be conveyed and treated as an individual property capable of independent use and fee simple ownership, and **the Owner or Owners of each UNIT shall own,** as an appurtenance to the ownership of each said UNIT, **an undivided interest in the COMMON ELEMENTS**....

(emphasis added). Furthermore, neither the Master Deed nor the By–Laws of the Avian Forest Homeowners' Association grants the homeowners' association an ownership interest in the common elements. We therefore find no question of material fact exists regarding ownership of the common elements which would preclude summary judgment as to liability.

## CONCLUSION

Based on the foregoing, the order of the trial court granting partial summary judgment with regard to liability is

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.